# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF TEXAS,
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **JOSEPH EDWARD MATLOCK, and** § | | |
| **JEANIE DANN MATLOCK,** § | | |
| § | | |
| **Plaintiffs** § | | |
| § | | |
| V. § | Civil Action No. 5:24-CV-00954 | |
| § | | |
| **ERIC S. WRIGHT,** § | | |
| **MARSHA A. WRIGHT, and** § | | |
| **Fish4Him ENTERTAINMENT, LLC,** § | | |
| § | | |
| **Defendants** § | | |

## PLAINTIFFS' ORIGINAL COMPLAINT

TO THE HONORABLE COURT:

COME NOW, Plaintiffs, JOSEPH EDWARD MATLOCK and JEANIE DANN MATLOCK, and file this Original Complaint against Defendants, ERIC S. WRIGHT, MARSHA A. WRIGHT, and Fish4Him ENTERTAINMENT, LLC, and in support thereof, Plaintiffs respectfully show the following:

### A. PARTIES

1. Plaintiff, JOSEPH EDWARD MATLOCK ("Mr. MATLOCK"), is an individual that is a citizen of the State of Texas, and he resides in Guadalupe County, Texas.

2. Plaintiff, JEANIE DANN MATLOCK ("Ms. MATLOCK"), is an individual that is a citizen of the State of Texas, and she resides in Guadalupe County, Texas.

3. Defendant, ERIC S. WRIGHT ("Mr. WRIGHT"), is an individual that is a citizen of the State of Georgia. Mr. WRIGHT may be served with process at 2622 Callier Springs Road SE, Rome, Georgia 30161, or wherever he may be found.

4. Defendant, MARSHA A. WRIGHT ("Ms. WRIGHT"), is an individual that is a citizen of the State of Georgia. Ms. WRIGHT may be served with process at 2622 Callier Springs Road SE, Rome, Georgia 30161, or wherever she may be found.

5. Defendant, Fish4Him ENTERTAINMENT, LLC ("Fish4Him ENTERTAINMENT"), is a limited liability company established under the laws of the State of Georgia. Fish4Him ENTERTAINMENT has its principal place of business in the State of Georgia. Fish4Him ENTERTAINMENT may be served with process by serving its registered agent, ERIC S. WRIGHT, at 2622 Callier Springs Road SE, Rome, Georgia 30161.

## B. JURISDICTION

6. The Court has jurisdiction over the lawsuit under 28 U.S.C. § 1332(a)(1) because the Plaintiffs and Defendants are citizens of different U.S. states, and the amount in controversy exceeds $75,000, excluding interest and costs.

## C. VENUE

7. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this claim occurred in this District.

## D. CONDITIONS PRECEDENT

8. All conditions precedent have been performed or have occurred.

## E. FACTS

9. Mr. and Ms. WRIGHT own Fish4Him ENTERTAINMENT, a "Christian" film production company.

10. Mr. MATLOCK has written and published a novella titled, "The Servant". "The Servant" novella was copyrighted in the year 2021, and since this time, Mr. MATLOCK has been the sole proprietor of all rights, title, and interest in and to the copyright on "The Servant" material.

Fish4Him ENTERTAINMENT represented to Mr. MATLOCK that it wanted to produce and film a television series on "The Servant", and Mr. MATLOCK proceeded to write eight (8) scripts for the television series.

11. Mr. WRIGHT subsequently asked Mr. and Ms. MATLOCK for a loan to have Fish4Him ENTERTAINMENT film a pilot for "The Servant" television series. Mr. WRIGHT represented to Mr. and Ms. MATLOCK that the purpose of the pilot film was for Defendants to solicit investors for the television series, and that the loan would be paid back with investor capital quickly. Based on these representations, Mr. and Ms. MATLOCK agreed to loan Fish4Him ENTERTAINMENT Sixty-Five Thousand Dollars ($65,000) to film the pilot for "The Servant" television series. However, Mr. WRIGHT asked Mr. and Ms. MATLOCK to make a cashier's check payable to Ms. WRIGHT, not to Fish4Him ENTERTAINMENT. On December 22, 2023, Mr. and Ms. MATLOCK secured a cashier's check made payable to Ms. WRIGHT for the amount of $65,000, and mailed this cashier's check to Ms. WRIGHT.

12. The pilot for "The Servant" television series was filmed in January 2024 by Fish4Him ENTERTAINMENT. After the pilot film was completed, the Defendants asked Mr. and Ms. MATLOCK for another loan to pay for the production of the first television episode for "The Servant"; the Defendants' second loan request was for the amount of Five Hundred Thousand Dollars ($500,000). The first television episode was to be filmed in San Antonio, Texas with the following famous actors: John Schneider, Erik Estrada, and Kevin Sorbo. Mr. WRIGHT represented to Mr. and Ms. MATLOCK that high level executives from Netflix, Paramount Plus, and NBC were very interested in broadcasting "The Servant" television series and wanted to view an episode. Mr. WRIGHT also represented to Mr. and Ms. MATLOCK that the aforementioned famous actors were necessary to gain the interest of networks like Netflix, Paramount Plus, and

3

NBC, and to attract investors for the television series. Mr. WRIGHT further represented to Mr. and Ms. MATLOCK that he was already working with investors to collect the capital needed to pay back the loans from Mr. and Ms. MATLOCK, and that they could expect to be paid back quickly.

13. Relying on the representations made by Mr. WRIGHT, Mr. and Ms. MATLOCK proceeded to wire from multiple financial institutions the total amount of $500,000 to an account held by Mr. and Ms. WRIGHT at Truist Bank, on February 7, 2024.

14. Fish4Him ENTERTAINMENT allegedly filmed the first television series episode of "The Servant" in San Antonio, Texas in March 2024. The Defendants subsequently asked Mr. and Ms. MATLOCK for an additional Twenty-Five Thousand Dollars ($25,000) because Fish4Him ENTERTAINMENT allegedly needed to re-film a scene from the first episode. Mr. and Ms. MATLOCK wired the additional $25,000 to Mr. and Ms. WRIGHT's account at Truist Bank on May 14, 2024.

15. Mr. WRIGHT also represented to Mr. and Ms. MATLOCK that Mr. and Ms. WRIGHT were going to meet with investors in San Antonio, Texas in June 2024 to collect the money to pay back the $590,000 loan, and that Mr. and Ms. MATLOCK would be invited to attend this meeting. Mr. and Ms. MATLOCK were then told by Mr. WRIGHT that they could <u>not</u> attend the alleged investor meeting.

16. Mr. and Ms. MATLOCK have loaned Defendants the total sum of $590,000, and the Defendants will not make any commitment to a time period when the money will be paid back. The Defendants previously represented that they would pay back the $590,000 loan after meeting with investors in June 2024, but failed to do so. Mr. and Ms. Matlock would not have loaned $590,000 to the Defendants but for their false representations.

17. Further, the Defendants continue to solicit money for the production of "The Servant" television series, when the Defendants do not have any ownership interest in "The Servant" novella, "The Servant" television series scripts, or "The Servant" subject matter – all of which are owned by "The Servant" author and creator Mr. MATLOCK with copyrighted protection. The Defendants are also wrongfully selling "The Servant" merchandise on the Fish4Him ENTERTAINMENT website; the Defendants have essentially stolen "The Servant" subject matter from Mr. MATLOCK, in violation of his copyright on the material.

18. The Defendants also state on the Fish4Him ENTERTAINMENT website, where they are soliciting money for "The Servant" television series, that the entire television series will be filmed in San Antonio, Texas. Therefore, Defendants intend to continue filming and making money from "The Servant" in violation of Mr. MATLOCK's copyright on the material.

### F. COUNT 1—FRAUD

19. Defendants represented to Plaintiffs that Defendants were going to have investors quickly pay back the $590,000 loan made by Plaintiffs to film "The Servant" television series, that Defendants had investors committed to capitalizing the television series and were going to pay back the loan in June 2024, and that large networks like Netflix, Paramount Plus, and NBC were very interested in broadcasting the television series.

20. Defendants' representation to Plaintiffs was material because Plaintiffs would not have loaned $590,000 to the Defendants but for their representation.

21. Defendants' conduct amounted to a false representation to Plaintiffs.

22. Defendants made the false representation to Plaintiffs knowing it was false.

23. Defendants intended for Plaintiffs to rely on the false representation.

24. Plaintiffs justifiably relied on Defendants' false representation when Plaintiffs loaned

the amount of $590,000 to Defendants.

25. Defendants' false representation directly and proximately caused injury to Plaintiffs, resulting in economic damages.

26. Plaintiffs' injury resulted from Defendants' actual fraud and/or malice, which entitles Plaintiffs to exemplary damages.

### G. COUNT 2 - PROMISSORY ESTOPPEL

27. Defendants promised Plaintiffs that Defendants would quickly pay back the $590,000 loan made by the Plaintiffs to film "The Servant" television series, and that Defendants had investors committed to capitalize the television series and were going to pay back the loan in June 2024.

28. Plaintiffs relied on Defendants' promise by loaning Defendants the sum of $590,000. Because of the nature of the promise, Plaintiffs' reliance was both reasonable and substantial.

29. Defendants knew, or reasonably should have known, that Plaintiffs would rely on Defendants' promise.

30. Injustice to Plaintiffs can be avoided only if Defendants' promise is enforced.

31. Plaintiffs' reliance on Defendants' promise resulted in injury to Plaintiffs, which caused economic damages.

32. Plaintiffs are entitled to recover reasonable and necessary attorney fees because this suit is for promissory estoppel. Plaintiffs retained counsel, who presented Plaintiffs' claim to Defendants. Defendants did not tender the amount owed within 30 days after the claim was presented.

### H. COUNT 3 - UNJUST ENRICHMENT

33. Plaintiffs are entitled to recover economic damages from Defendants because Defendants obtained the benefit of receiving a monetary loan in the amount of $590,000 from Plaintiffs without paying the money back.

34. Defendants have been unjustly enriched in the amount of $590,000.

35. Defendants have had the benefit of the $590,000 that they borrowed from the Plaintiffs, but Defendants will not pay back the money owed to Plaintiffs.

### I. COUNT 4 - MONEY HAD & RECEIVED

36. Defendants hold money in the amount of $590,000 that, in equity and good conscience, belongs to Plaintiffs.

37. Plaintiffs seek liquidated damages in the amount of at least $590,000.

38. Plaintiffs' injury resulted from Defendants' malice and/or actual fraud, which entitles Plaintiffs to exemplary damages.

### J. COUNT 5 – CONVERSION

39. Plaintiffs owned the $590,000 ("personal property") loaned to Defendants to film "The Servant" television series.

40. Defendants wrongfully acquired and exercised dominion and control over the Plaintiffs' personal property.

41. Defendants have refused to return the personal property to the Plaintiffs.

42. Defendants' wrongful acts proximately caused injury to the Plaintiffs, resulting in economic damages.

43. Plaintiffs' injury resulted from Defendants' malice and/or fraud, which entitles Plaintiffs to exemplary damages.

## K. COUNT 6 – CONVERSION

44. Mr. MATLOCK rightfully owns the following "Property" with copyrighted protection: "The Servant" novella, "The Servant" television series scripts, and "The Servant" subject matter.

45. Defendants have wrongfully acquired and exercised dominion and control over Mr. MATLOCK's Property by performing the following acts. The Defendants continue to solicit money to produce "The Servant" television series, when the Defendants do not have an ownership interest in "The Servant" novella, "The Servant" television series scripts, or "The Servant" subject matter. Further, the Defendants are wrongfully selling "The Servant" merchandise on the Fish4Him ENTERTAINMENT website; the Defendants have essentially stolen "The Servant" subject matter from Mr. MATLOCK.

46. The Defendants also state on the Fish4Him ENTERTAINMENT website, where they are soliciting money for "The Servant" television series, that the entire television series will be filmed in San Antonio, Texas. Therefore, Defendants intend to continue filming and making money from "The Servant" in violation of Mr. MATLOCK's ownership rights to the material.

47. The aforementioned wrongful acts by the Defendants amount to a clear repudiation of Mr. MATLOCK's rights to "The Servant" novella, "The Servant" television series scripts, and "The Servant" subject matter.

48. Defendants' wrongful acts proximately caused injury to Mr. MATLOCK, resulting in economic damages.

49. Mr. MATLOCK's injury resulted from Defendants' malice and/or fraud, which entitles Mr. MATLOCK to exemplary damages.

## L. COUNT 7 - UNFAIR TRADE PRACTICES & UNFAIR COMPETITION

50. Defendants are selling and marketing "The Servant" merchandise and subject matter

material, and soliciting money for production of "The Servant" television series. Defendants have thus been engaging in unfair trade practices and unfair competition against Mr. MATLOCK. This conduct has caused Mr. MATLOCK irreparable injury.

## M. REQUEST FOR PRELIMINARY INJUNCTION

51. Plaintiffs seek to enjoin Defendants and their agents and representatives from selling and marketing "The Servant" merchandise and subject matter material, and from soliciting money for the production of "The Servant" television series, because this activity infringes on Mr. MATLOCK's copyright on "The Servant" material.

52. There is a substantial likelihood that Plaintiffs will prevail on the merits.

53. If the Court does not grant a preliminary injunction, Defendants will continue its activities that infringe on Mr. MATLOCK's copyright on "The Servant" material.

54. Plaintiffs will likely suffer irreparable injury if the Court does not enjoin Defendants from selling and marketing "The Servant" merchandise and subject matter material, and from soliciting money for the production of "The Servant" television series.

55. Defendants will not suffer undue hardship or loss as a result of the issuance of a preliminary injunction.

56. Issuance of a preliminary injunction would not adversely affect the public interest.

57. Plaintiffs ask the Court to set this request for preliminary injunction for hearing at the earliest possible time and, after hearing the request, to issue a preliminary injunction against Defendants.

## N. JURY DEMAND

58. Plaintiffs respectfully request a jury trial.

## O. PRAYER

59. For these reasons, Plaintiffs, JOSEPH EDWARD MATLOCK and JEANIE DANN MATLOCK, ask for judgment against Defendants, ERIC S. WRIGHT, MARSHA A. WRIGHT, and Fish4Him ENTERTAINMENT, LLC, jointly and severally for the following:

a. Actual damages.

b. Lost profits.

c. Prejudgment and postjudgment interest.

d. Reasonable and necessary attorney fees.

e. Punitive damages.

f. Costs of suit.

g. Defendants and their agents and representatives be enjoined during and after this suit from infringing Mr. MATLOCK's copyright on "The Servant" material in any manner and from publishing, selling, or marketing "The Servant" material.

h. Defendants pay additional damages for willfully infringing Mr. MATLOCK's copyright on "The Servant" material.

i. All other relief to which Plaintiffs are justly entitled.

Respectfully submitted,

**GAYTAN LAW FIRM, PLLC**
/s/ Paul Gaytan
Paul Anthony Gaytan
State Bar No. 24007233
Email: paul@gaytanlaw.com
304 S. Camp St.
Seguin, TX 78155
Tel. (830) 865-8282
**Attorney for Plaintiffs**